UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

CIVIL ACTION NO. _____

In Re Application Of

MESA POWER GROUP, LLC

    Applicant

pursuant to 28 U.S.C. § 1782
For Judicial Assistance in
Obtaining Evidence from SAMSUNG
C&T AMERICA, INC., KYO IN CHOO
and JIN GOO KWON For Use in a
Foreign and International
Proceeding

---

***EX PARTE* APPLICATION FOR JUDICIAL ASSISTANCE IN OBTAINING
EVIDENCE FOR USE IN A FOREIGN AND INTERNATIONAL PROCEEDINGS
PURSUANT TO 28 U.S.C. § 1782 AND INCORPORATED MEMORANDUM OF LAW**

---

Matthew P. O'Malley, Esq.
Tompkins, McGuire, Wachenfeld & Barry, LLP
Four Gateway Center, 5th Floor
100 Mulberry Street
Newark, N.J. 07102
(973) 622-3000
momalley@tompkinsmcguire.com
*Local Counsel for Applicant Mesa Power Group, LLC*

# TABLE OF CONTENTS

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    A.   Relevant Parties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    B.   Basis for Dispute Between Mesa Power and Canada . . . . . . 3

DISCOVERY REQUESTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    I.   Document Production . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    II   Deposition(s) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

RELIEF REQUESTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

    I.   Mesa Power's Application Meets All of the Statutory
        Requirements of 28 U.S.C. § 1782 . . . . . . . . . . . . . . . . . . . 14

        A.   Samsung and its Corporate Representatives Reside
            or are Found in the District of New Jersey . . . . . 15

        B.   The Evidence Will be Used in Proceedings in a
            Foreign or International Tribunal . . . . . . . . . . . . . 15

        C.   Mesa Power is an "Interested Person" Under
            Section 1782 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

        D.   Granting the Application Would Foster the Twin
            Policy Aims of Section 1782 . . . . . . . . . . . . . . . . . 21

   II. This Court Should Exercise its Jurisdiction Pursuant to
      Section 1782 and Grant the Application . . . . . . . . . . . . . . . . . 23

        A.   Neither Samsung Nor the Corporate Representatives
            are Parties to the NAFTA Arbitration . . . . . . . . . . 24

        B.   The Relevant Tribunals, Laws and Rules are not
            Hostile to this Application . . . . . . . . . . . . . . . . . . 24

i

    C.    The Application is not an Attempt to Avoid
          Foreign Proof Gathering Restrictions .......... 25

    D.    The Application and Discovery Requests are
          Narrowly Tailored ............................. 25

III. *EX PARTE* APPLICATION PROPER PROCEDURE ................... 26

IV.  SAMSUNG AND THE CORPORATE REPRESENTATIVES SHOULD PRESERVE
     RELEVANT EVIDENCE ....................................... 26

CONCLUSION ............................................... 28

## TABLE OF AUTHORITIES

### Cases

Chevron Corp. v. Shefftz,
  754 F. Supp. 2d 254 (D.C. Mass. 2010)....................19, 20

Comision Ejecutiva Hidroelectrica del Rio Lempa v. Nejapa Power
  Co.,
  2008 WL 4809035 (D. Del. Oct. 14, 2008)......................19

Ecuador v. Bjorkman,
  2011 WL 3495993 (D. Colo. Aug. 9, 2011)......................19

In re Application of Chevron Corp.,
  709 F. Supp. 2d 283 (S.D.N.Y. 2010)..........................24

In re Application of Esses,
  101 F.3d 873 (2d Cir. 1996)..................................26

In re Application of Gianoli,
  3 F.3d 54 (2d Cir. 1993......................................26

In re Babcock Borsig AG,
  583 F. Supp. 2d 233 (D. Mass. 2008)..........................19

In re Cell Pathways, Inc.,
  203 F.R.D. 189 (E.D. Pa. 2001)...............................27

In re Chevron Corp.,
  633 F.3d 153 (3d Cir. 2011)..................................24

In re Chevron Corp.,
  709 F. Supp. 2d 283 (S.D.N.Y. 2010)..........................19

In re Clerici,
  481 F.3d 1324 (11th Cir. 2007)..................15, 21, 23, 26

In Re Hallmark Cap. Corp.,
  534 F. Supp. 2d 951 (D. Minn. 2007)..........................19

In re Oxus Gold PLC,
  2007 WL 1037387 (D.N.J. April 2, 2007)..............18, 20, 24

In re Republic of Ecuador,
  2010 WL 3702427 (N.D. Cal. Sept. 15, 2010)...................19

In re Roz Trading Ltd.,
  469 F. Supp. 2d 1221 (N.D. Ga. 2006)........................19

In re St. Jude Medical, Inc.,
  2002 WL 341019 (D. Minn. Mar. 1, 2002)......................27

In re Trinidad and Tobago,
  848 F.2d 1151 (11th Cir. 1988)..............................26

In re Veiga,
  746 F. Supp. 2d 8 (D.D.C. 2010).............................19

Intel Corp. v. Advanced Micro Devices, Inc.,
  542 U.S. 241 (2004).....................................passim

John Deere Ltd. v. Sperry Corp.,
  754 F.2d 132 (3d Cir. 1985).............................21, 22

Kulzer v. Esschem, Inc.,
  390 Fed. Appx. 88 (3d Cir. 2010)........................14, 23

Lancaster Factoring Co. Ltd. v. Mangone,
  90 F.3d 38 (2d Cir. 1996)...................................21

Mosel Vitelic Corp. v. Micron Tech., Inc.,
  162 F. Supp. 2d 307 (D. Del. 2000)..........................27

Positran Mfg., Inc. v. Diebold, Inc.,
  2003 WL 21104954 (D. Del. May 15, 2003).....................27

Ukrnafta v. Carpatsky Petroleum Corp.,
  2009 WL 2877156 (D. Conn. Aug. 27, 2009)....................19

**Statutes**

28 U.S.C. § 1782 .......................................passim

**Rules**

Fed.R.Civ.P. 26 .............................................1

Fed.R.Civ.P. 30 .............................................1

Fed.R.Civ.P. 45 .............................................1

## Other Authorities

David A. Losk, *Section 1782(a) After Intel: Reconciling Policy Considerations and a Proposed Framework to Extend Judicial Assistance to International Arbitral Tribunals*, 27 Cardozo L. Rev. 1035 (2005) ...................................... 22

Gary Born, International Commercial Arbitration: Commentary and Materials 7 (2d ed. 2001) ....................................... 22

Hans Smit, *International Litigation Under the United States Code*, 65 Colum. L. Rev. 1015 (1965) ............................. 17

Hans Smit, *The Supreme Court Rules on the Proper Interpretation of Section 1782: Its Potential Significance for International Arbitration*, 14 Am. Rev. Int'l. Arb. 295 (2003). ........................................................ 17

S. Rep. No. 1580, at 7-8, U.S. Code Cong. & Admin. News 1964, pp. 3782 .................................................. 16

Applicant, Mesa Power Group, LLC ("Mesa Power"), respectfully submits this application for an Order for discovery pursuant to 28 U.S.C. § 1782 and Rules 26, 30, and 45 of the Federal Rules of Civil Procedure (the "Application") from Samsung C&T America, Inc. ("Samsung"), Kyo In Choo and Jin Goo Kwon, which and whom are located in this District, for use in a pending arbitration under the North American Free Trade Agreement ("NAFTA") involving Mesa Power and the Government of Canada ("Canada") (the "NAFTA Arbitration") filed with the Government of Canada.

## FACTUAL BACKGROUND[1]

### A.   Relevant Parties

Mesa Power is a Delaware limited liability corporation dedicated, among other things, to the generation and management of wind energy and wind energy projects. Robertson Decl. ¶ 2. Mesa Power owns Mesa Wind, LLC ("Mesa Wind"), which in turn owns and controls Mesa AWA, LLC ("Mesa AWA"). Mesa AWA owns and controls four wind farm projects located in Ontario Canada. Id.

Samsung, located at 85 Challenger Road, 6th Floor, Ridgefield Park, NJ 07660, is the American regional headquarters

---

[1]   The facts relevant to this Application are set forth below and in the Declaration of Mr. Lee Robertson III ("Robertson"), which is respectfully submitted herewith and which will be referred to throughout this Application as "Robertson Decl.," with further reference to the relevant paragraph number in the Declaration, where appropriate.

of Samsung C&T Corporation, a company headquartered in Seoul, in the Republic of South Korea, which directly controls Samsung. Id. ¶¶ 4-5. Samsung's Renewable Energy Team develops renewable energy business throughout North and South America and, through its subsidiary, Samsung Renewable Energy Inc. is the owner of the wind development project at issue here. Id. ¶ 4. As related thereto, Samsung announced "a 2.5 GW of Wind and Solar FA Agreement with the Ontario government." Id.

Kyo In Choo and Jin Goo Kwon, located in this District, are the President and Treasurer of Samsung, respectively (collectively the "Corporate Representatives"). Id.

Canada is a foreign sovereign, which is a party to NAFTA, and the location of wind farms that are the subject of the NAFTA Arbitration. Id. ¶¶ 2-3, Ex. C ¶ 9. The Province of Ontario is a subnational government of Canada. Id., Ex. C ¶ 9. In turn, Canada is responsible for Ontario's observance of NAFTA pursuant to NAFTA Article 105. Id. The Ontario Power Authority ("OPA") is a state enterprise that is wholly-owned and controlled by the Province of Ontario. Id. The Ministry of Energy has powers, conferred by Ontario law, to direct the OPA to implement a renewable energy Feed-In-Tariff program, known as the FIT Program, which powers include the setting of prices and the administration of contracts thereunder. Id.

**B.**   Basis for Dispute Between Mesa Power and Canada

Through long-term fixed price contracts with the OPA, the Ontario FIT Program guaranteed electrical grid access to renewable energy producers, pursuant to which such producers would receive a set price for renewable energy and a guaranteed contract for the energy they produce, provided certain requirements are satisfied.   Id., Ex. C ¶ 12.   Green energy suppliers, including Mesa Power, needed to enter into contractual relations with OPA under the FIT Program to obtain renewable power pricing.   Id.   The FIT Program required these green energy suppliers to connect to local distribution companies and the transmission asset owners.   Id.

To participate in the FIT Program, applicants must comply with all of the rules established by the OPA regarding the FIT Program (the "FIT Rules").   Id., Ex. C ¶ 13.   A successful applicant under the FIT Program would receive a Power Purchase Agreement (PPA) from the OPA that guaranteed a set purchase price over a twenty-year period.   Id.

Mesa Power owns and controls four wind farm projects in the Province of Ontario, Canada.   Id. ¶ 6.   These wind farms were the subjects of six applications by Mesa Power to obtain long-term power purchase contracts under the Ontario FIT program.   Id.

On January 21, 2010, the Government of Ontario entered into an undisclosed agreement, known as the *Green Energy Investment Agreement*, with Samsung C&T Corporation and Korea Electric Power Corporation (hereinafter referenced as the "Original Korean Consortium"), which provided the Korean Consortium with preferential access to renewable energy transmission to the detriment of Mesa Power. Id. ¶ 7, Ex. C ¶ 22, 25. Pattern Energy Group LP joined the Original Korean Consortium (collectively these three companies working in concert are referred to as the "Korean Consortium"). Id. ¶ 7. The OPA, at the direction of the Ontario Minister of Energy, thereafter segregated 2500MW of power transmission capacity in Ontario for the Original Korean Consortium's use. Id., Ex. C ¶ 23.

On August 3, 2011, the Government of Ontario, through the OPA, awarded twenty-year power purchase agreements to companies controlled by the Korean Consortium, including Samsung Renewable Energy Inc., a subsidiary of Samsung. Id. ¶ 9.

Conversely, Mesa Power was not offered FIT Program contracts because of purported transmission capacity limits in the area, even though there was still available transmission capacity at each of their respective interconnects, thereby effectively shutting Mesa Power out of the market due to the Government of Ontario's unfair preference in holding back transmission capacity for the Korean Consortium. Id. ¶ 10, Ex.

C ¶ 48.   That is to say, the Government of Ontario unfairly restricted the transmission capacity available to Mesa Power and thereby confirmed a course of conduct of arbitrariness, discrimination, and inequitable treatment as to Mesa Power as compared to other investors.  Id., Ex. C ¶¶ 6, 35, 50, 62-63. Ultimately, as a result of the foregoing, Mesa Power suffered losses and damages to its wind farm business operations in Canada.  Id. ¶ 8.

On July 6, 2011, Mesa Power filed with the Government of Canada, in Ottawa, Canada, a Notice of Intent under the United Nations Commission on International Trade Law ("UNCITRAL") Arbitration Rules to establish an international tribunal, to address violations of Section A of Chapter 11 of NAFTA by Canada.  Id. ¶ 12.  On October 4, 2011, Mesa Power filed a Notice of Arbitration pursuant to NAFTA Article 1120 in Ottawa, Canada, thereby formally commencing the NAFTA Arbitration. Id.; Id. Ex. C, which is incorporated herein by reference.  This foreign and international NAFTA Arbitration tribunal, established under this international trade and investment treaty, constitutes an international tribunal operating under international law, NAFTA and the UNCITRAL Arbitration Rules. Id. ¶ 15.

In the NAFTA Arbitration, Mesa Power is seeking:  a) a declaration that the Canadian Government has breached NAFTA; b)

a declaration that such a breach has caused harm to Mesa Power; and c) an award of damages payable by Canada in an amount not less than CDN $775,000,000 for the value of Mesa Power's investments; appropriate compound interest on this amount at commercial interest rates; and an amount to be fixed for the costs and disbursements for professional and experts advisors and the costs of the arbitration. Id., Ex. C ¶¶ 71-73.

The documentary evidence and testimony sought in this Application from Samsung and its Corporate Representatives, which demonstrate the benefits obtained from the Government of Ontario to the detriment of Mesa Power, the subject of the NAFTA Arbitration, are necessary so that Mesa Power can prosecute its NAFTA Arbitration against Canada. Id. ¶¶ 16-18. Specifically, the documentation and evidence sought is directly related to the Government of Ontario's actions and the subject matter of the NAFTA Arbitration, which are in the possession of Samsung and certain individuals employed by Samsung. Id. ¶ 16. The evidence sought relates directly to the central issue in the dispute, namely the difference in the treatment between Mesa Power and Samsung, the reasons for Samsung being afforded better treatment, and the criteria that was applied by Canada to Samsung. Id. ¶ 17.

As detailed below, this Application seeks relevant documentary evidence in the possession of Samsung and the

deposition(s) of certain person(s) at Samsung with the most knowledge as to the documents produced and the subject matter of the NAFTA Arbitration.  Id. ¶¶ 19-20.

## DISCOVERY REQUESTED

Through this Application, Mesa Power requests the following discovery from Samsung and the Corporate Representatives:

**I.**   **Document Production[2]**

1)   All documents relating to the meeting of January 2010, where Samsung C&T Corporation's president announced the Korean deal with the Ontario government, namely the *Green Energy Investment Agreement*;

2)   All documents relating to the negotiations, execution and announcement of the *Green Energy Investment Agreement* between the Original Korean Consortium, the parent companies, subsidiaries or affiliates of any of its members, and the

---

[2]   "Document" is defined to include, without limitation, any and all of the following: any means of writing of any kind, whether recorded on paper or electronic means, audio or visual recordings, or any other mechanical or electronic means of storing or recording information; paper and electronic correspondence, paper or electronic files, instructions, orders, notes, agreements, contracts, memoranda, and invoices, whether in draft or final form. In every case of electronic records, same is to be provided in a format that includes the production of any original metadata existing in connection with such record. Unless otherwise stated, the relevant time period is from January 1, 2009, to the present.

Proposed subpoenas for the discovery targets identified herein are annexed to the Certification of Counsel as Exhibits A (Samsung), B (President) and C (Treasurer).

Ontario Government, including all draft and final agreements relating to the *Green Energy Investment Agreement* or modifications to such Agreement;

3)   All documents, including, but not limited to, phone records, journal and calendar entries, and notes, evidencing phone calls between any employee or agent of Samsung C&T Corporation, its parents, subsidiaries or affiliates, and members of the Ontario Government relating to the *Green Energy Investment Agreement* and any documents created in connection with or as a result of such calls;

4)   All documents created by, or received by Samsung C&T Corporation, its parents, *subsidiaries* or affiliates, in relation to the registered lobbyists in the Province of Ontario, including, without limitation, Counsel Public Affairs Inc. and documents mentioning Charles Beer or Stefan Baranski;

5)   All documents *created* by, or received by Samsung C&T Corporation, its parents, subsidiaries or affiliates, in relation to the priority ranking system under the Ontario Power Authority's Feed-In-Tariff program ("FIT Program");

6)   All documents between the Ontario Government and Samsung C&T Corporation, its parents, subsidiaries or affiliates, including, without limitation, any documents referring to the Original Korean Consortium, including the parents, subsidiaries or affiliates of any of its members;

7)  All documents *in* the possession, custody, or control of Samsung C&T Corporation, its parents, subsidiaries or affiliates, regarding Ontario Ministry of Energy directions to the Ontario Power Authority dated:

a)  September 24, 2009, with respect to the development of a Feed-In-Tariff ("FIT") program;

b)  April 1, 2010, with respect to the Ontario Government's *Green Energy Investment Agreement* ("GEIA") with Samsung C&T Corporation and Korea Electric Power Corporation;

c)  September 17, 2010, related to the *Green Energy Investment Agreement* with the Government of Ontario and the Korean Consortium dated January 2010;

d)  June 3, 2011, with respect to "Allocating Capacity and Offering FIT Contracts for Bruce to Milton Enabled Projects";

e)  July 29, 2011, related to the Korean Consortium's Projects in Haldimand County, Ontario;

f)  August 2, 2011, with respect to "Supporting Manufacturing Supply Chain Development."

8)  All documents evidencing any correspondence with any Ontario ministry, including, without limitation, the Ontario Ministry of Natural Resources, with respect to the revisions of guidelines related to the Renewable Energy Approvals (REA)

9

process, including but not limited to, the Natural Heritage Assessment Guide for Renewable Energy Projects; and the Bats and Bat Habitats: Guidelines for Wind Power Projects.

9) Proposals by Samsung C&T Corporation, its parents, subsidiaries or affiliates, which were submitted to the Ontario Power Authority in relation to the FIT Program;

10) Documents submitted to the Ontario Power Authority in relation to any project proposed by Samsung C&T Corporation, its parents, subsidiaries or affiliates, or any other members of the Korean Consortium, to the Ontario Power Authority and all document relating to any such project accepted by the Ontario Power Authority.

11) Documents created or received by Samsung C&T Corporation, its parents, subsidiaries or affiliates, or any other members of the Korean Consortium, with respect to any of the following consultations with the Ontario Power Authority:

   a) May 19, 2010 - FIT Economic Connection Test Web-enabled Teleconference;

   b) March 23, 2010 - Introduction to Economic Connection Test;

   c) February 25, 2010 - Domestic Content Compliance;

   d) November 20, 2009 - Transmission and Distribution Technical Information Session;

   e) October 21, 2009 - Feed-In Tariff (FIT) Programs

Q&A Session;

f)   October 8, 2009 - FIT and micro-FIT Q&A Session;

g)   Sept 28, 2009 - Stakeholder and Public Introduction to Feed-in Tariff (FIT) Programs and Q&A Session;

h)   August 6, 2009 - FIT Question and Answer Teleconference;

i)   July 21, 2009 - Revised FIT Program Rules, Standard Definitions and Price Schedule;

j)   May 12, 2009 - Session Info - Revised Price Schedule, Revised Program Rules, and Draft Contract;

k)   April 28, 2009 - Session Info - Economic Test;

l)   April 21, 2009 - Session Info - Legacy projects and program initialization 2.0;

m)   April 14, 2009 - Session Info - FIT contract milestones;

n)   April, 2009 - Info - FIT price schedule (i.e., technologies, size, and prices);

o)   March 31, 2009 - Session Info - FIT Notice to proceed and metering and settlement;

p)   March 24, 2009 - Session Info - FIT Application Process; and

q)   March 17, 2009 - Session Info - Objectives of FIT Program

12)   Correspondence to or from Samsung C&T Corporation, its parents, subsidiaries or affiliates, and the Government of Ontario (including, without limitation, any of its ministries, officials, state enterprises and its various agencies), including, without limitation, correspondences to or from the following individuals or any officials who work in each of their departments, ministries, state enterprises, or agencies:

    a)   Dalton McGuinty, the Premier of Ontario;

    b)   George Smitherman, Ontario Minister of Energy;

    c)   Brad Duguid, Ontario Minister of Energy; and

    d)   Colin Andersen, Ontario Power Authority.

13) Documents relating to any and all telephone conversations, meetings, discussions, or information exchanges between or amongst any employee or agents of Samsung C&T Corporation, its parents, subsidiaries, affiliates, Kyo In Choo, or Jin Goo Kwon, with any member of the Korean Consortium, including the parents, subsidiaries or affiliates of any of its members, relating to the benefits (including ranking and additional negotiations with the Government of Ontario) under the Samsung-KEPCO-Pattern Energy announcement of April 2011.

## II.  Deposition(s)

1.   The sworn deposition of following Samsung personnel with respect to the subject matter of the Application and NAFTA

Arbitration, as well as the documents produced in relation herewith:

    a)   Kyo In Choo (President)

    b)   Jin Goo Kwon (Treasurer)

2)   The depositions requested in the preceding sub-paragraphs to be taken before a person authorized to administer oaths in the State of New Jersey and on a date within thirty (30) days of this Court's deadline for the production of the above-listed documents.

## RELIEF REQUESTED

Mesa Power respectfully requests that this Court enter an Order compelling the production of the documents listed in paragraphs I.1 through I.13 above within twenty-one (21) days of service of a subpoenas commanding the production of those documents; permitting the deposition(s) requested in sub-paragraphs II.1 within thirty (30) days of the deadline for the production of the documents sought in the subpoenas; and further ordering Samsung and the Corporate Representatives to preserve the evidence sought by Mesa Power in order to insure that the evidence sought is not lost or destroyed in the interim.[3]

---

[3] A proposed form of Order is respectfully submitted herewith.

## ARGUMENT

**I.   MESA POWER'S APPLICATION MEETS ALL OF THE STATUTORY REQUIREMENTS OF 28 U.S.C. § 1782**

28 U.S.C. § 1782 provides, in pertinent part:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal including criminal investigations conducted before formal accusation. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court … The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing. To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

28. U.S.C. § 1782(a).

Courts have distilled from the statutory language of 28 U.S.C. § 1782 the following basic requirements for its invocation: "(1) the person from whom discovery is sought must reside in the district; (2) the discovery must be for use in proceedings before a foreign tribunal; and (3) the application can be made by either the foreign tribunal or by an interested

14

party." Kulzer v. Esschem, Inc., 390 Fed. Appx. 88, 91 (3d Cir. 2010); see also Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 246-47 (2004) (listing the first requirement above and addressing the second and third); In re Clerici, 481 F.3d 1324, 1331-32 (11th Cir. 2007) (listing same three requirements and adding that "the request must seek evidence, whether it be the 'testimony or statement' of a person or the production of 'a document or other thing'").

Mesa Power's Application meets all of the statutory requirements of 28 U.S.C. § 1782.

## A. Samsung and its Corporate Representatives Reside or are Found in the District of New Jersey

Samsung and its Corporate Representatives are found in this District, conducting business from Samsung's corporate headquarters at 85 Challenger Road, 6th Floor, Ridgefield Park, NJ 07660, which is in Bergen County, in the State and the District of New Jersey.   Robertson Decl. ¶ 4.   Accordingly, Samsung and its Corporate Representatives reside or are found within the District in which Mesa Power seeks evidence as set forth by the requirements of 28 U.S.C. § 1782(a).

## B. The Evidence Will Be Used in Proceedings in a Foreign or International Tribunal

The discovery sought in this Application is for use in a proceeding before an international tribunal, specifically in the NAFTA Arbitration filed by Mesa Power with the Government of

Canada in Ottawa, Canada, under the UNCITRAL rules, governed by NAFTA and international law, and is necessary so that Mesa Power can prosecute its action against Canada in such arbitral proceedings.

In _Intel_, AMD filed an antitrust complaint against Intel with the Directorate-General for Competition of the Commission of the European Communities. 542 U.S. 241, 246 (2004). In connection with that complaint, AMD sought documents from Intel pursuant to section 1782. _Id._ The district court denied AMD's request, concluding that the discovery requested was not authorized by section 1782. _Id._ The Court of Appeals for the Ninth Circuit reversed. On appeal, the Supreme Court affirmed the Ninth Circuit's decision and, in doing so, provided some insight as to what constitutes a proper section 1782 "tribunal" under the statute.

Specifically, the Supreme Court found that when Congress amended § 1782 in 1964, substituting the words "a proceeding in a foreign or international tribunal" for former "any judicial proceeding," it did so in order to "provid[e] the possibility of U.S. judicial assistance in connection with [administrative and quasi-judicial proceedings abroad]." _Id._ at 258 (citing S. Rep. No. 1580, at 7-8, U.S. Code Cong. & Admin. News 1964, pp. 3782,

3788)[4]   The Supreme Court went on to hold that the European Commission was, in fact, a section 1782 "tribunal" because it acted as a "first-instance decision-maker" with authority to "determine liability and impose penalties, dispositions that [would] remain final unless overturned by the European courts." Id. at 258, relying on 255, n. 9.

In In re Chevron Corp., 633 F.3d 153, 163 (3d Cir. 2011), the Third Circuit held that the discovery sought was "for a use in a proceeding in a foreign or international tribunal," notwithstanding that courts before which litigation was pending had expressed that they were not receptive to the discovery, because the discovery sought *also was for use* in a pending international, foreign arbitration filed under UNCITRAL pursuant to a BIT.

---

[4] Professor Hans Smit, the Director of the Columbia Law School Project on International Procedure and the Reporter to the Commission responsible for the 1964 amendments to section 1782, was cited with approval throughout the Court's opinion in Intel.   Professor Smit has written extensively on the question presented here and has stated repeatedly that Section 1782 covers private arbitral tribunals. See, e.g., Hans Smit, *The Supreme Court Rules on the Proper Interpretation of Section 1782: Its Potential Significance for International Arbitration,* 14 AM. REV. INT'L. ARB.295 (2003).  Indeed, Professor Smit's 1965 article, published shortly after the 1964 legislation, states that "[t]he term 'tribunal' embraces all bodies exercising adjudicatory powers, and includes investigating magistrates, administrative and arbitral tribunals, and quasi-judicial agencies, as well as conventional civil, commercial, criminal and administrative courts."  Hans Smit, *International Litigation Under the United States Code,* 65 COLUM. L. REV. 1015, 1026 n.71 (1965);see also Intel, 542 U.S. at 258.

Similarly, in <u>In re Oxus Gold PLC</u>, 2006 WL 2927615, *4 (D.N.J. Oct. 11, 2006) (annexed to the Certification of Counsel as Exhibit D), the applicant sought discovery under 28 U.S.C. § 1782 for use in certain arbitration proceedings filed pursuant to UNCITRAL, claiming that the foreign sovereign which was a respondent in such proceedings "violated the Agreement for the Promotion and Protection of Investment." <u>Id.</u> at *2. The respondent argued that the arbitral proceedings were not a "foreign or international tribunal" within the meaning of § 1782, and the court rejected its argument. <u>Id.</u> at *3-4. The court reasoned that "[t]he international arbitration at issue is being conducted by the United Nations Commission on International Law, a body operating under the United Nations and established by its member states." <u>Id.</u> at *6. Consistent therewith, the Court held that, because "[t]he proceedings in issue has been authorized by the sovereign states of the United Kingdom and the Kyrgyzstan Republic for the purpose of adjudicating disputes under the" bilateral investment treaty ("BIT"), "the international arbitration proceeding in the present case is included as a 'foreign international tribunal' in Section 1782." <u>Id.</u>; <u>see also</u> <u>In re Oxus Gold PLC</u>, 2007 WL 1037387, *4-5 (D.N.J. Apr. 2, 2007) (arbitration brought under BIT under UNCITRAL rules qualified as a "tribunal" for purposes of section 1782) (annexed to the Cert. of Counsel as Exhibit E).

Indeed, the majority of cases to address the issue of whether international arbitral proceedings conducted pursuant to an international, inter-government treaty are "foreign or international tribunals" within the meaning of § 1782 have held that they are.  See, e.g., In re Republic of Ecuador, 2010 WL 3702427 (N.D. Cal. Sept. 15, 2010) (granting ex parte application for discovery pursuant to 28. U.S.C. § 1782 for use in a BIT arbitration) (annexed to the Cert. of Counsel as Exhibit F); In re Chevron Corp., 709 F. Supp. 2d 283, 291 (S.D.N.Y. 2010) (same); In re Veiga, 746 F. Supp. 2d 8, 22-23 (D.D.C. 2010) (same); Chevron Corp. v. Shefftz, 754 F. Supp. 2d 254, 260 (D.C. Mass. 2010) (same); Ukrnafta v. Carpatsky Petroleum Corp., 2009 WL 2877156, *2-4 (D. Conn. Aug. 27, 2009) (annexed to the Cert. of Counsel as Exhibit G) (same); Ecuador v. Bjorkman, 2011 WL 3495993, *3 (D. Colo. Aug. 9, 2011) (annexed to the Cert. of Counsel as Exhibit H)(allowing discovery under section 1782 in furtherance of foreign BIT arbitration).[5]

_____

[5]Cf. In re Roz Trading Ltd., 469 F. Supp. 2d 1221, 1224-26 (N.D. Ga. 2006) ("A finding that an arbitral panel…is a 'tribunal' within the meaning of § 1782(a) is consistent with the reasoning in Intel. Although Intel did not expressly hold arbitral bodies to be 'tribunals,' it quoted approvingly language that included 'arbitral tribunals' within the term's meaning in § 1782(a)"); In Re Hallmark Cap. Corp., 534 F. Supp. 2d 951, 955-57 (D. Minn. 2007) (same); In re Babcock Borsig AG, 583 F. Supp. 2d 233, 238-40 (D. Mass. 2008) (same); Comision Ejecutiva Hidroelectrica del Rio Lempa v. Nejapa Power Co., 2008

Like the arbitral bodies in <u>Chevron</u>, <u>Oxus</u>, and the various other cases cited above, the underlying NAFTA Arbitration here, brought pursuant to an international, inter-governmental treaty between Canada, the United States, and Mexico, filed in Ottawa, Canada, qualifies as a proceeding before a foreign or international tribunal.

### C.  Mesa Power is an "Interested Person" Under Section 1782

Mesa Power is an "interested person" within the meaning of section 1782, as it is the Claimant in the NAFTA Arbitration filed by it against Canada for which it is seeking to gather the evidence sought here from Samsung and the Corporate Representatives for use therein.  Robertson Decl.  ¶¶ 16-18, Ex. I; <u>see Intel</u>, 542 U.S. at 256 ("No doubt litigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke § 1782.").  Since Mesa Power requires discovery from Samsung and the Corporate Representatives to proceed with its prosecution of the claims against Canada in the NAFTA Arbitration, as the Claimant therein, it is an "interested person" within the meaning of § 1782.

---

WL 4809035, *1 (D. Del. Oct. 14, 2008) (annexed to the Cert. of Counsel as Exhibit I)("the Supreme Court's decision in *Intel* (and post- *Intel* decisions from other district courts) indicate that Section 1782 does indeed apply to private foreign arbitrations").

### D. Granting the Application Would Foster the Twin Policy Aims of Section 1782

Granting the Application also would foster section 1782's "twin aims of providing efficient assistance to participants in international litigation and encouraging foreign countries by example to provide similar assistance to our courts." <u>Intel</u>, 542 U.S. at 252 (internal quotations omitted).[6]

The first aim would be served because the proposed discovery is narrowly tailored to seek evidence highly relevant to Mesa Power's prosecution of its NAFTA Arbitration claims against Canada. Thus, granting the Application would be an efficient means of providing assistance to a party before a foreign tribunal. <u>See</u> <u>Lancaster Factoring Co. Ltd. v. Mangone</u>, 90 F.3d 38, 41 (2d Cir. 1996) (goals of section 1782, which dates back to 1855, are to provide "equitable and efficacious" discovery procedures in U.S. courts 'for the benefit of tribunals and litigants involved in litigation with international aspects'") (quoting S. Rep. No. 1580, 88th Cong., 2d Sess. 2 (1964) ("Senate Report")); <u>John Deere Ltd. v. Sperry</u>

---

[6] These "twin aims" are consistent with the legislative history of section 1782, as recognized in <u>John Deere Ltd. v. Sperry Corp.</u>, 754 F.2d 132, 135 (3d Cir. 1985) (legislative history of § 1782 "reflects a determination on the part of Congress to broaden the scope of international judicial assistance afforded by the federal courts" and that, through its passage, Congress hoped that it would stimulate reciprocal aid from other countries).

Corp., 754 F.2d 132, 135 (3d Cir. 1985) (noting that a "liberal intent to provide judicial assistance" has been "acknowledged as a primary statutory goal since section 1782's inception"); In re Clerici, 481 F.3d 1324, 1331 (11th Cir. 2007) (same).

Equally important, United States federal court assistance furthers the well-established federal policy in favor of international arbitration. See, e.g., GARY BORN, INTERNATIONAL COMMERCIAL ARBITRATION: COMMENTARY AND MATERIALS 7, 31 (2d ed. 2001). Moreover, assistance under section 1782 can improve the accuracy and efficiency of arbitration.[7]

The second aim would be served because granting the Application would further the exchange of judicial assistance between the United States and Canada. See John Deere, 754 F.2d at 135 (noting that section 1782 takes into account "considerations of comity and sovereignty that pervade international law" and that reciprocity is not a requirement for its application); Senate Report, at 2 (section 1782 reflects "a major step in bringing the United States to the forefront of nations adjusting their procedures to those of sister nations" and an "effort[ ] to improve practices of international cooperation in litigation").

_____

[7] See, e.g., David A. Losk, *Section 1782(a) After Intel: Reconciling Policy Considerations and a Proposed Framework to Extend Judicial Assistance to International Arbitral Tribunals*, 27 CARDOZO L. REV. 1035, 1062 (2005).

Accordingly, both the <u>Intel</u> factors and the "twin aims" of section 1782 support the granting of Mesa Power's Application.

In summary, because Mesa Power has sufficiently met all of the requirements for invoking 28 U.S.C. § 1782, this Court has jurisdiction to order Samsung and the Corporate Representatives to provide the requested discovery.

## II.   THIS COURT SHOULD EXERCISE ITS JURISDICTION PURSUANT TO SECTION 1782 AND GRANT THE APPLICATION

Once a court has determined that the statutory requirements for relief under section 1782 have been met, the court is vested with the discretion to afford that relief. In <u>Intel</u>, the Supreme Court delineated certain factors that district courts should apply in deciding whether section 1782 relief should be granted to an applicant. <u>Intel</u>, 542 U.S. 241.

Those factors are: (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding," because "the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign

country or the United States"; and (4) whether the request is otherwise "unduly intrusive or burdensome." Id. at 264-65; see also Kulzer v. Esschem, Inc., 390 Fed. Appx. 88, 91 (3d Cir. 2010); Clerici, 481 F.3d at 1329-30.

All of these factors support the granting of this Application.

### A.   Neither Samsung Nor the Corporate Representatives are Parties to the NAFTA Arbitration

First, neither Samsung nor the Corporate Representatives are participants in the NAFTA Arbitration. Robertson Decl., Ex. C. However, documents and information in their possession, custody and control are directly relevant to the arbitration. Therefore, section 1782 plays a vital role in Mesa Power's ability to obtain evidence from Samsung and the Corporate Representatives.

### B.   The Relevant Tribunals, Laws, and Rules are Not Hostile to this Application

Second, as set forth more fully above, see supra at 17-20, section 1782 applications have been routinely granted in aid of foreign and international arbitral proceedings authorized by international inter-government treaties between sovereigns, as is the case here. See, e.g, In re Chevron Corp., 633 F.3d 153, 163 (3d Cir. 2011); In re Oxus Gold PLC, 2006 WL 2927615, *4 (D.N.J. Oct. 11, 2006) (annexed to the Cert. of Counsel as

Exhibit D); <u>In re Application of Chevron Corp.</u>, 709 F. Supp. 2d 283, 290 (S.D.N.Y. 2010).

Moreover, the NAFTA Arbitration is being administered pursuant to the UNCITRAL rules and neither NAFTA nor the UNCITRAL rules contains any provision or rule prohibiting the filing of this Application or the request made in it.

### C.   The Application is Not an Attempt to Avoid Foreign-Proof Gathering Restrictions

Third, this application is not interposed for any improper purpose or to circumvent any foreign proof-gathering restrictions or other policies of a foreign country or the United States. <u>Intel</u>, 542 U.S. at 58. There is no UNCITRAL rule that prohibits the gathering of evidence via Section 1782. And, again, as shown above, section 1782 has previously been used in aid of UNCITRAL proceedings in numerous other cases.

### D.   The Application and Discovery Requests are Narrowly Tailored

Finally, this application is narrowly tailored to the subject matter of Mesa Power's NAFTA Arbitration and therefore is not intrusive or burdensome. The information sought is highly relevant and necessary for a fair and just resolution of the underlying matter.

In short, the factors relevant to section 1782 applications, as set forth in <u>Intel</u>, all favor the granting of Mesa Power's Application.

## III. *EX PARTE* APPLICATION PROPER PROCEDURE

It is appropriate for this Court to issue the Order on an *ex parte* basis, without prejudice to the rights of the subpoenaed parties to file a motion to vacate or quash. See In re Clerici, 481 F.3d 1324, 1329-30 (11th Cir. 2007) *(ex parte* order granted one day after § 1782 application filed); In re Application of Esses, 101 F.3d 873, 874 (2d Cir. 1996) (affirming grant of *ex parte* order under § 1782); In re Application of Gianoli, 3 F.3d 54, 55 (2d Cir. 1993) (same); In re Trinidad and Tobago, 848 F.2d 1151, 1152 (11th Cir. 1988) (affirming *ex parte* order under § 1782), overruled on other grounds in Intel, 542 U.S. 241.

## IV. SAMSUNG AND THE CORPORATE REPRESENTATIVES SHOULD PRESERVE RELEVANT EVIDENCE

Mesa Power is concerned that some or all of the documentary evidence sought may be lost or jeopardized by Samsung or the Corporate Representatives.  Specifically, due to the political nature of the allegations contained within Mesa Power's Notice of Arbitration, Mesa Power is concerned that the Government of Ontario may encourage or pressure Samsung or the Corporate Representatives to remove relevant evidence related to the NAFTA Arbitration and transfer it to Samsung's offices located in a foreign country, outside the jurisdiction of this Court. Robertson Decl. ¶ 21.  Mesa Power also is concerned that Samsung

or the Corporate Representatives may relocate documents outside of this Court's jurisdiction, for their own reasons and for their own benefit, as a direct competitor of Mesa Power. <u>Id.</u> ¶ 22. An Order by this Court would ensure that such evidence would be preserved from political interference and competitive pressures and prevent either their destruction or removal from the jurisdiction of this Court to offices in foreign countries.

To the extent that any of the requested evidence may be discarded or deleted, manually or automatically, Samsung and the Corporate Representatives should be directed to preserve all such potentially relevant evidence. <u>See</u> <u>In re St. Jude Medical, Inc.</u>, 2002 WL 341019 *1 (D. Minn. Mar. 1, 2002) (annexed to the Cert. of Counsel as Exhibit J) (ordering parties to preserve electronic documents in their possession, custody, or control that contain information potentially relevant to the litigation); <u>In re Cell Pathways, Inc.</u>, 203 F.R.D. 189, 195 (E.D. Pa. 2001) (same); <u>see also</u> <u>Mosel Vitelic Corp. v. Micron Tech., Inc.</u>, 162 F. Supp. 2d 307, 311 (D. Del. 2000) ("A party, who is aware that evidence might be relevant to a pending or future litigation, has an affirmative duty to preserve this material" and "[t]his duty extends to that party's attorneys"); <u>Positran Mfg., Inc. v. Diebold, Inc.</u>, 2003 WL 21104954 * 2 (D. Del. 2003) (annexed to the Cert. of Counsel as Exhibit K) (same).

## CONCLUSION

Mesa Power respectfully requests that this Court grant this application pursuant to 28 U.S.C. § 1782, and issue an Order authorizing it to serve subpoenas pursuant to 28 U.S.C. § 1782 compelling the production of the documents listed herein and in the proposed subpoenas; permitting the depositions listed herein and in the proposed subpoenas within thirty (30) days of the deadline for the production of the documents; and directing Samsung and the Corporate Representatives to duly preserve all evidence related to the subject matter of this Application.

Dated:  November 15, 2011

Respectfully submitted,

Tompkins, McGuire, Wachenfeld& Barry, LLP Four Gateway Center, 5th Floor
100 Mulberry Street
Newark, N.J. 07102
Tel:(973) 622-3000; Fax:(973) 623-7780

Matthew P. O'Malley, Esq.
momalley@tompkinsmcguire.com

- and -

**ASTIGARRAGA DAVIS**
José I. Astigarraga, Fla. Bar No 263508*
Edward M. Mullins, Fla. Bar No. 863920*
Annette C. Escobar, Fla. Bar No. 369380*
701 Brickell Avenue, 16th Floor
Miami, Florida 33131
Tel: (305) 372-8282; Fax: (305) 372-8202

- and -

**APPLETON & ASSOCIATES**
Barry Appleton, DC Bar No. 458636*
800 Connecticut Ave NW, Suite 888
Washington DC, 20006
Tel: 202.293-0800; Fax: 202.293.0988

\* Counsel will be filing applications for *pro hac vice* admission.