Exhibit F

To Certification of Counsel

Westlaw.

Page 1

Slip Copy, 2010 WL 3702427 (N.D.Cal.)
**(Cite as: 2010 WL 3702427 (N.D.Cal.))**

Only the Westlaw citation is currently available.

United States District Court,
N.D. California.
In re the REPUBLIC OF ECUADOR, Applicant.
For the Issuance of a Subpoena for the Taking of a Deposition and the Production of Documents in a Foreign Proceeding Pursuant to 28 U.S.C. § 1782.

No. C-10-80225 MISC CRB (EMC).
Docket No. 1.
Sept. 15, 2010.

C. Macneil Mitchell, Winston & Strawn LLP, New York, NY, Eric Bloom, Winston & Strawn LLP, Washington, DC, Richard Arthur Lapping, Winston & Strawn LLP, San Francisco, CA, for the Republic of Ecuador.

**ORDER GRANTING REPUBLIC OF ECUADOR'S EX PARTE APPLICATION FOR THE ISSUANCE OF A SUBPOENA**
EDWARD M. CHEN, United States Magistrate Judge.

*1 Currently pending before the Court is the Republic of Ecuador's ("ROE") ex parte application for the issuance of a subpoena pursuant to 28 U.S.C. § 1782. The ROE seeks the issuance of a subpoena to Diego Fernando Borja Sanchez, who is purportedly a resident in this District. The proposed subpoena reflects that the ROE seeks both Mr. Borja's testimony as well as the production of documents in his possession, custody, or control. The ROE asserts that this information is highly relevant to an international arbitration which Chevron Corporation initiated against the ROE pursuant to a bilateral investment treaty between the ROE and the United States. *See* Bloom Decl., Ex. 19 (notice of arbitration). In the arbitration, Chevron asserts that the ROE abused the justice system in connection with lawsuits taking place in the ROE against Chevron, including the *Lago Agrio* lawsuit, in which a group of Ecuadorians assert claims against Chevron for, *inter alia,* violations of an environmental law. *See In re Chevron Corp.,* No. M-19-111, 2010 U.S. Dist. LEXIS 47034, at *5-6, 10-11 (S.D.N.Y. May 10, 2010); Docket No. 19 (Not.¶ 4) (alleging, *inter alia,* that the ROE's "judicial branch has conducted the Lago Agrio Litigation in total disregard of Ecuadorian law, international standards of fairness, and Chevron's basic due process and natural justice rights, and in apparent coordination with the executive branch and the Lago Agrio plaintiffs"). Having considered the ROE's papers and accompanying submissions, the Court hereby **GRANTS** the application.

**I. *DISCUSSION***
A. *Legal Standard*
The ROE's request for relief is brought, as noted above, pursuant to 28 U.S.C. § 1782. Under § 1782,

> [t]he district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made ... upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court. By virtue of his appointment, the person appointed has power to administer any necessary oath and take the testimony or statement. The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing. To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 3702427 (N.D.Cal.)
**(Cite as: 2010 WL 3702427 (N.D.Cal.))**

Page 2

28 U.S.C. § 1782(a). As reflected by the language of § 1782, its purpose is to provide federal-court assistance in the gathering of evidence for use in a foreign tribunal. *See Intel Corp. v. Advanced Micro Devices, Inc.,* 542 U.S. 241, 247, 124 S.Ct. 2466, 159 L.Ed.2d 355 (2004); *see also Schmitz v. Bernstein Liebhard & Lifshitz, LLP,* 376 F.3d 79, 84 (2d Cir.2004) (noting that § 1782 has "twin aims," *i.d.,* "providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts") (internal quotation marks omitted).

*2 A district court is authorized to grant a § 1782 application

> where (1) the person from whom the discovery is sought resides or is found in the district of the district court to which the application is made, (2) the discovery is for use in a proceeding before a foreign tribunal, and (3) the application is made by a foreign or internal tribunal or "any interested person."[FN1]

> FN1. The Supreme Court has held that § 1782 does not contain a "foreign-discoverability requirement"-*i.e.,* there is no requirement that the information sought be discoverable under the law governing the foreign proceeding. *Intel,* 542 U.S. at 253. The Court has further held that there is no requirement that a § 1782 applicant show "United States law would allow discovery in domestic litigation analogous to the foreign proceeding." *Id.* at 263.

*In re Chevron Corp.,* 2010 U.S. Dist. LEXIS 47034, at *15.

However, simply because a court has the authority under § 1782 to grant an application does not mean that it is required to do so. *See Intel,* 542 U.S. at 264. The Supreme Court has identified several factors that a court should take into consideration in ruling on a § 1782 request:

> (1) whether the material sought is within the foreign tribunal's jurisdictional reach and thus accessible absent Section 1782 aid; (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court jurisdictional assistance; (3) whether the Section 1782 request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and (4) whether the subpoena contains unduly intrusive or burdensome requests.

*Chevron,* 2010 U.S. Dist. LEXIS 47034, at *16; *see also Intel,* 542 U.S. at 264-65.

B. *Ex Parte Proceeding*

Before addressing the merits of the ROE's § 1782 request, the Court discusses first the ex parte nature of the ROE's request for relief. That is, ROE has asked for issuance of a subpoena to Mr. Borja without giving notice of its request for relief either to Mr. Borja or to the parties involved in the underlying international arbitration, including Chevron.

In its papers, the ROE has explained that it has proceeded without giving notice to Mr. Borja out of fear that "he might elect to leave this judicial district should he be made aware of the instant Application because he is served with the subpoena." App. at 2 n. 1. The ROE contends that this fear is justified based on an alleged conversation that Mr. Borja had with an associate, Santiago Escobar. *See id.; see also* Bloom Decl., Ex. 40, at 3-4 (transcript of alleged conversation); *id.,* Ex. 45, at 1 (investigation conducted for *Lago Agrio* plaintiffs). Presumably, the ROE has not given Chevron notice of its request for relief because it has some concerns that Chevron might alert Mr. Borja of the possibility of a subpoena. *See* Memo. at 13 (asserting that "Chevron has ... apparently advised Mr. Borja that he will likely be a witness on their

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 3702427 (N.D.Cal.)
(Cite as: 2010 WL 3702427 (N.D.Cal.))

Page 3

behalf at the [international arbitration]").

The Court does not make any ruling with respect to whether the ROE's fears or concerns are justified. Even if they were not, the ROE correctly points out that it is common for "the process of presenting the request to a court and to obtain the order authorizing discovery" to be conducted ex parte. *In re Letter of Request from Supreme Court,* 138 F.R.D. 27, 32 n. 6 (S.D.N.Y.1991). "[S]uch ex parte applications are typically justified by the fact that the parties will be given adequate notice of any discovery taken pursuant to the request and will then have the opportunity to move to quash the discovery or to participate in it." *Id.; see also In re Letters Rogatory from Tokyo Dist.,* 539 F.2d 1216, 1219 (9th Cir.1976) (in discussing § 1782, noting that "Letters Rogatory are customarily received and appropriate action taken with respect thereto ex parte" and stating that "[t]he witnesses can and have raised objections and exercised their due process rights by motions to quash the subpoenas"); *In re Chevron Corp.,* No. M-19-111, slip. op. at 1 (S.D.N.Y. Aug. 6, 2010) (located at Bloom Decl., Ex. 54) (noting that "[a]pplications pursuant to 28 U.S.C. § 1782 frequently are granted *ex parte"*; adding that, "[w]here, as here, the application is for the issuance of subpoenas, no substantial rights of the subpoenaed person are implicated by such action, as the subpoenaed person, once served, is entitled to move to quash or modify the subpoenas").

*3 Because the Court's order here does not foreclose Mr. Borja, Chevron, or any other person or entity involved in the international arbitration from contesting the subpoena once issued, the Court shall allow the ROE to proceed with this application ex parte.

C. *Authority to Issue Subpoena*
As stated above, a district court is authorized to grant a § 1782 application

> where (1) the person from whom the discovery is sought resides or is found in the district of the district court to which the application is made,
> (2) the discovery is for use in a proceeding before a foreign tribunal, and (3) the application is made by a foreign or internal tribunal or "any interested person."

*In re Chevron Corp.,* 2010 U.S. Dist. LEXIS 47034, at *15. The Court has reviewed the ROE's application and has preliminarily determined that the statutory requirements have been satisfied. First, the ROE has made a prima facie showing that Mr. Borja lives in this District. *See* Bloom Decl., Ex. 45) (investigation conducted for *Lago Agrio* plaintiffs). Second, there is case law authority holding that an arbitration pending in a tribunal established by an international treaty constitutes a foreign tribunal for purposes of § 1782. *See id.* at *17-18 (distinguishing this kind of arbitration from an arbitral tribunal established by private parties). Finally, there can be no real dispute that the ROE qualifies as an interested person because it is the respondent in the international arbitration initiated by Chevron. *See* Bloom Decl., Ex. 19 (notice of arbitration); *Intel,* 542 U.S. at 256 (stating that an interested person under § 1782 "plainly reaches beyond the universe of persons designated 'litigant,' " although there is "[n]o doubt [that] litigants are included among, and may be the most common example").

D. *Discretionary Factors*
Having concluded that it has the authority to issue the subpoena, the Court now turns to the question of whether the discretionary factors identified by the Supreme Court weigh in favor of or against issuance of the subpoena. The Court makes the preliminary determination that these factors largely weigh in favor of issuance of the subpoena.

1. *Jurisdictional Reach of Foreign Tribunal*
The Supreme Court has noted that,

> when the person from whom discovery is sought is a participant in the foreign proceeding ..., the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 3702427 (N.D.Cal.)
(Cite as: 2010 WL 3702427 (N.D.Cal.))

abroad. A foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence. In contrast, nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid.

*Id.* at 264. In the instant case, Mr. Borja is not a party in the international arbitration, and therefore this factor weighs in the ROE's favor. *See In re Chevron Corp.,* 2010 U.S. Dist. LEXIS 47034, at *20 (noting that Ecuadorian court and international arbitral tribunal lacked jurisdiction to compel the individual, who was located in the district and not a party to the foreign proceedings, to produce the material sought).

2. *Nature and Receptivitiy of Foreign Tribunal*

**\*4** There is no evidence before the Court that the international arbitral tribunal at issue here is either receptive or nonreceptive to U.S. federal-court jurisdictional assistance, and therefore this factor is essentially neutral.

The Court does note, however, that Chevron has made § 1782 requests before other U.S. federal courts for use in the international arbitration at issue and does not appear to have made any contention that the arbitral tribunal would not be receptive to such. Moreover, several of those courts have authorized subpoenas under § 1782. *See, e.g., Chevron Corp. v. Stratus Consulting, Inc.,* No. 10-cv-00047-MSK-MEH, 2010 U.S. Dist. LEXIS 46778, at *5-6 (D.Colo. Apr. 13, 2010) (noting that "Judge Kane held a hearing on the Section 1782 petition ... and granted the issuance of the subpoenas with leave for the filing of any motions to quash within thirty days"); *In re Chevron Corp.,* 2010 U.S. Dist. LEXIS 47034, at *20-21, 24 (concluding that discretionary factors satisfied); *In re Chevron Corp.,* No. 1:10-MI-0076-TWT-GGB, slip op. at 9 (N.D.Ga. Mar. 2, 2010) (located at Bloom Decl., Ex. 53) (stating that "[s]ection 1782 has ... been applied to authorize discovery for matters subject to international arbitration, like the [international arbitration here]"). Finally, the Court takes note that even opposition by the international arbitral tribunal would not necessarily carry the day. *See In re Chevron Corp.,* 2010 U.S. Dist. LEXIS 47034, at *21 & n. 51 (pointing out that, in *Intel,* the European Commission stated that it did not need or want the U.S.-federal court assistance).

3. *Attempt to Circumvent Foreign Proof-Gathering Restrictions and Policies*

There is nothing to suggest that the ROE's § 1782 request is an attempt to circumvent foreign proof-gathering restrictions. Indeed, it does not appear that the international arbitral tribunal at issue here could compel Mr. Borja to provide evidence because he is not a party to the international arbitration. *See id.* at *22 (applying same reasoning). Accordingly, this factor weighs in the ROE's favor.

4. *Undue Intrusion or Burden*

In its papers, the ROE explains that it wishes to subpoena Mr. Borja (both to provide testimony and produce documents) because Chevron has implicated Mr. Borja as a witness in its allegations that the ROE's "judicial branch has conducted the Lago Agrio Litigation in total disregard of Ecuadorian law, international standards of fairness, and Chevron's basic due process and natural justice rights, and in apparent coordination with the executive branch and the Lago Agrio plaintiffs." Docket No. 19 (Not.¶ 4). For example, as reflected in its notice of arbitration for the international arbitration, Chevron claims as follows:

> 52. Judge Nunez [the presiding judge in the *Lago Agrio* lawsuit] has made statements to third parties, unrelated to the Lago Agrio Litigation, indicating a pre-disposition of the outcome of the case. In April 2009, two individuals pursuing business opportunities in Ecuador-an Ecuadorian named Diego Borja and a U.S. citizen named Wayne Hansen-were invited to meet with Judge Nunez in connection with potential remediation projects to be funded with the proceeds of a judgment against Chevron. Two meetings were arranged between Messrs. Borja and Hansen and

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 3702427 (N.D.Cal.)
(Cite as: 2010 WL 3702427 (N.D.Cal.))

Page 5

Judge Nunez. During these meetings, while the Lago Agrio Litigation was still in its evidentiary phase and additional filings by the parties were still to be made, Judge Nunez was recorded stating that he would issue a ruling in late 2009 finding Chevron liable and that the appeals would be a formality.

*5 53. Messrs. Borja and Hansen also were invited to meet in the offices of Ecuador's ruling Alianza PAIS party with persons including Patricio Garcia, who identified himself as a political coordinator for the party. Mr. Garcia was recorded stating that the remediation contracts would be awarded in exchange for a bribe which was to be divided between Judge Nunez, the office of the Presidency of Ecuador and the Lago Agrio plaintiffs. Mr. Garcia also stated that the legal advisor of the Ecuadorian President's office, Alexis Mera, had given instructions as to how the proceeds of the supposed Lago Agrio judgment against Chevron were to be routed, and that the executive branch was involved in drafting Judge Nunez's decision.

Bloom Decl., Ex. 19 (Not.¶¶ 52-53).

According to the ROE, there is evidence (*i.e.*, the alleged conversations between Mr. Borja and Mr. Escobar) suggesting that Mr. Borja was not an innocent third party who just happened to learn of the alleged bribery scheme but rather was a long-time associate of Chevron whom Chevron would pay for any favorable testimony. The ROE also maintains that the same evidence indicates that Mr. Borja has evidence in his possession, custody, or control that would be incriminating to Chevron. Accordingly, in the proposed subpoena, the ROE asks Mr. Borja to provide testimony and to produce documents, including documents relating to his employment or affiliation with Chevron, his wife's employment or affiliation with Chevron, payments received from Chevron, meetings with Chevron, communications with Chevron, communications with Mr. Hansen, communications with Mr. Escobar, and the *Lago Agrio* litigation.

At this juncture, the Court is satisfied the ROE has made a prima facie showing that the information it seeks from Mr. Borja has, as a general matter, some relevance to the international arbitration given the allegations made by Chevron in its notice of arbitration and the alleged conversations between Mr. Escobar and Mr. Borja.[FN2] And given the relevance of the information, it is arguably less likely that issuance of the subpoena will result in undue intrusion or burden to Mr. Borja. The final discretionary factor thus weighs in favor of issuance of the subpoena. That being said, the Court's ruling here does not preclude Mr. Borja-or for that matter Chevron-from contesting the subpoena based on undue intrusion or burden or based on other grounds (*e.g.*, overbreadth).

> FN2. The Court makes no finding as to whether these conversations are authentic. The ROE, however, has provided evidence-*i.e.*, an investigative report-to support its contention that the conversations are. *See* Bloom Decl., Ex. 45, at 1 (investigative report).

II. *CONCLUSION*

For the foregoing reasons, the Court grants the ROE's application. The ROE may serve the subpoena (attached to this Order).

This Order disposes of Docket No. 1.

IT IS SO ORDERED.

N.D.Cal.,2010.
In re Republic of Ecuador
Slip Copy, 2010 WL 3702427 (N.D.Cal.)

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.